IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

JASON BARNETT,                )
                              )
    Plaintiff,                )
                              )
v.                            )    Case No. 6:14-CV-03339-NKL
                              )
CAROLYN W. COLVIN,            )
Acting Commissioner           )
of Social Security,           )
                              )
    Defendant.                )

**ORDER**

Plaintiff Jason Barnett seeks review of the Administrative Law Judge's decision denying his application for Social Security Disability Insurance benefits. For the following reasons, the decision of the Administrative Law Judge ("ALJ") is affirmed.

### I. Background

#### A. Medical History

Barnett suffered a small bowel injury, pelvis fracture, and left femur fracture in 2001 as a result of a car accident. In the aftermath of the car accident he received treatment for his injuries and underwent physical therapy. He could not work for a number of months. Following his recovery, Barnett returned to work and maintained substantial gainful activity through July 6, 2011, his alleged onset date.

In July 2011, John Bumberry, M.D., diagnosed Barnett with a possible hernia. Approximately a week later, Kyle Smith, D.O., diagnosed Barnett with poorly controlled

1

hypertension and prescribed medication. In August, Dr. Smith diagnosed Barnett with anxiety and hypertension. That same month, Barnett underwent surgery to have hardware removed from his left femur. At a subsequent appointment with Dr. Smith in October, Barnett reported anxiety and stated that he was not sleeping well; Dr. Smith diagnosed hypertension, left hip pain, left knee pain, left femur fracture, anxiety, and insomnia.

On November 14, 2011, Dr. Smith completed a Medical Source Statement – Physical regarding Barnett's capabilities. In this statement, Dr. Smith opined that Barnett could lift up to five pounds, stand and/or walk for up to 30 minutes at a time and up to four hours out of an eight hour workday, sit for 30 minutes at a time and up to five hours in an eight hour workday, and could never climb, kneel, crouch, or crawl, and could only occasionally balance and stoop. [Tr. 382-383].

In January 2012, Barnett again presented to Dr. Smith and was diagnosed with left hip pain, hypertension, insomnia, diarrhea, and anxiety. These diagnoses remained largely the same throughout the remainder of 2012.

In November 2012, Matthew Ericksen, D.O., completed a physical examination of Barnett at the request of Disability Determinations and returned a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Dr. Ericksen opined that Barnett could lift 50 pounds occasionally and 20 pounds frequently; could sit, stand, and/or walk for four hours at a time and up to six hours in an eight hour workday; could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and could tolerate only occasional exposure to extreme heat. [Tr. 440-445].

2

Case 6:14-cv-03339-NKL   Document 12   Filed 03/09/15   Page 2 of 9

## B. ALJ Decision

The ALJ denied Barnett's request for disability benefits, concluding that he had the Residual Functional Capacity ("RFC") to engage in substantial gainful activity. The ALJ concluded that despite Barnett's severe impairments of status-post left peritrochanteric hip fracture, left pubic fracture, left iliac crest fracture, sacroiliac disruption, intra-abdominal injury, chronic pain syndrome, hypertension, gastroesophageal reflux disease, and history of incisional hernia, he retained the following RFC:

> [T]o perform sedentary work as defined in 20 CFR 404.1567(a) including lifting up to 5 pounds frequently and up to 10 pounds occasionally, sitting up to 6 hours total in an 8-hour workday, and standing/walking up to 2 hours total in and [*sic*] 8-hour workday, with the following restrictions: he is unable to perform any work activity requiring climbing; he must avoid work activity requiring kneeling, crouching, and crawling; and he must avoid work at unprotected heights or around hazardous machinery.

[Tr. 19-22].

In determining the RFC, the ALJ considered the medical evidence of the record, as well as Barnett's testimony at the administrative hearing regarding the extent of his symptoms. At the administrative hearing, Barnett testified that he was unable to work due to chronic pain. He stated that he did not lift much weight due to his hernia, but was able to take care of his three young children while his wife was at work. This care included lifting his four month old child who weighed twelve pounds. Thomas Maxwell, M.D., testified at the hearing that Barnett was limited to lifting and/or carrying less than ten pounds both occasionally and frequently; could sit for up to five hours; could stand

3

and/or walk for up to two hours; could not climb ladders, ropes, and scaffolds; should not kneel, crouch or crawl; and should avoid unprotected heights and hazardous machinery. Following Dr. Maxwell's testimony, the ALJ questioned a vocational expert regarding Barnett's RFC. The vocational expert testified that a person with Barnett's RFC would be able to perform jobs such as food and beverage order clerk, charge account clerk, and document preparer. [Tr. 27-28].

## II. Standard of Review

"[R]eview of the Secretary's decision [is limited] to a determination of whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision 'simply because some evidence may support the opposite conclusion.'" *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. Discussion

Barnett argues that the ALJ erred in (1) failing to properly weigh the medical opinions of the record; and (2) failing to properly assess Barnett's credibility.

### A. Medical Opinions

Barnett contends that the ALJ erred in affording Dr. Smith's opinion little weight and failing to properly evaluate Dr. Maxwell's opinion.

4

Despite Dr. Smith's role as Barnett's treating physician, the ALJ was not obligated to defer entirely to Dr. Smith's opinion. In general, a treating physician's opinion is entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). However, the ALJ is obligated to afford controlling weight to a treating physician's opinion only if "a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record." SSR 96-2p.

In declining to adopt Dr. Smith's opinion regarding Barnett's RFC, the ALJ concluded that,

> Dr. Smith's progress notes offer very few clinical or objective findings. The undersigned notes that Dr. Smith frequently notes "decreased range of motion"; however, these findings are usually quite non-specific and do not indicate the affected joint. Furthermore, there is no evidence of other clinical findings (i.e., crepitus, swelling, tenderness, muscle spasm, other objective tests, etc.) that would support the extreme exertional limitations as assessed. The basis for Dr. Smith's opinion is therefore unclear, and with no objective clinical or laboratory notes by that doctor or any doctor to support the severe level of restriction, it does not meet the criteria for substantial weight.

[Tr. 26]. As the ALJ noted, Dr. Smith failed to perform significant clinical or diagnostic tests on Barnett to determine his functional abilities. Barnett's medical records contained notations regarding Barnett's left hip and knee pain, decreased range of motion, abnormal x-rays, and personal complaints regarding his symptoms, but nothing in the records provide a basis for Dr. Smith's extreme conclusion that Barnett was largely incapable of functioning. Moreover, nothing indicates that Dr. Smith performed tests to ascertain Barnett's level of mobility. After noting the absence of clinical findings, the ALJ did not simply substitute his own evaluation of the treating physician notes in rejecting Dr.

5

Smith's conclusions, but looked elsewhere in the record for evidence of Barnett's capabilities.

Review of the remainder of the record provided substantial evidence for the ALJ to conclude that neither Dr. Smith's opinion, nor Dr. Maxwell's very similar opinion, are representative of Barnett's capacity. Both opinions are inconsistent with Barnett's own statements regarding his abilities. For example, Dr. Smith noted in November 2011 that Barnett could lift only five pounds. [Tr. 382]. Dr. Maxwell later opined that Barnett could lift "less than 10 pounds both frequently and occasionally." [Tr. 42]. At the administrative hearing, however, Barnett testified that he routinely picked up his twelve-pound child. [Tr. 42]. Additionally, in October 2011, Barnett stated in a Function Report to the Social Security Administration that he was limited to "lifting – only 10 lbs." [Tr. 202]. Barnett also noted in his Function Report that he was able to take care of his three young children, help his wife get ready for work, pick up around the house, plan dinner and lunches for his family, have in home preschool activities, and cook dinner for his wife and kids. [Tr. 197]. These statements are inconsistent with the severe level of disability noted by Dr. Smith and Dr. Maxwell, and provide substantial evidence to support the ALJ's decision to provide little weight to these doctors' opinions. *See Whitman v. Colvin*, 762 F.3d 701, 706 (8th Cir. 2014) (concluding that the ALJ's opinion as supported by substantial evidence when the treating physician's opinion was "more restrictive than self-reported activities"); *see also Imhoff v. Astrue*, 2013 WL 30565, at *3 (W.D. Mo. 2013) (affirming the ALJ's decision denying benefits where the claimant was

6

Case 6:14-cv-03339-NKL   Document 12   Filed 03/09/15   Page 6 of 9

raising her three-year-old grandchild, which the ALJ noted could be both physically and emotionally demanding).

To reach the RFC determination, the ALJ also received guidance from Dr. Ericksen's 2012 examination and report. Dr. Ericksen noted that despite Barnett's multiple diagnoses, "the patient should have no difficulty performing and sustaining work-related functions such as sitting, standing, walking, handing objects, hearing, speaking, and traveling despite any functional limitations." [Tr. 439]. He then noted that Barnett would be able to lift up to 20 pounds frequently and 50 pounds occasionally, and sit, stand, and walk for four hours continuously and six hours in an eight hour workday. [Tr. 440-441].

Despite Dr. Ericksen's opinion that Barnett suffered few physical restrictions, the ALJ concluded that Barnett was limited to sedentary work with significant physical restrictions. In fact, the ALJ adopted nearly all of Dr. Smith and Dr. Maxwell's physical restrictions outside of the lifting, sitting, and standing limitations. Given Barnett's own statements regarding his functional capacity and the lack of objective evidence in Barnett's medical records, substantial evidence supports the ALJ's decisions to give little weight to Drs. Smith and Maxwell's opinions and rely on Dr. Ericksen's opinion in determining Barnett's sitting, walking, and lifting restrictions.

### B. Credibility Determination

Barnett also argues that the ALJ erred in assessing his credibility. Specifically, Barnett contends that the ALJ used his activities of daily living to assess his functional abilities, rather than his credibility, and failed to analyze the *Polaski* factors in reaching

7

his credibility determination. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (In analyzing a claimant's subjective complaints, the ALJ is to consider the entire record including the claimant's medical records, third party statements, the claimant's statements, and factors including (1) the claimant's activities of daily living; (2) the duration, frequency, and intensity of pain and other symptoms; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions.).

In light of Barnett's statements regarding his activities of daily living, substantial evidence supports the ALJ's conclusion that Barnett's testimony was not entirely credible. In reaching this conclusion, the ALJ noted that Barnett stated that he was able to care for his three young children while his wife was at work. His ability to perform the physically taxing chores that go along with caring for young children and a home is entirely at odds with his claims of debilitating conditions. While these activities undoubtedly have bearing on the RFC determination, they must also factor into the credibility analysis. When a claimant's actions contradict his statements about his abilities, it is certainly permissible for the ALJ to discredit the claimant's testimony. *See Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007) ("An ALJ may not disregard subjective complaints merely because there is no evidence to support the complaints, but may disbelieve subjective reports because of inherent inconsistencies or other circumstances.") (quotation omitted). Furthermore, the ALJ is not required to evaluate every *Polaski* factor in assessing a claimant's credibility. *Smith v. Colvin*, 756 F.3d 621, 627 (8th Cir. 2014). A substantial amount of evidence exists in the record regarding

Barnett's ability to exert himself caring for his three young children and home. This evidence is more than a "bare statement" of his ability to care for a child, and justifies the ALJ's conclusion that Barnett's testimony at the hearing regarding the extent of his disabilities was not entirely credible. *Cf. Wood v. Astrue*, 2013 WL 395820, at \*2 (W.D. Mo. Jan. 31, 2013) (concluding that the plaintiff's statement that she was able to care for her older, self-sufficient children "does not say anything about Plaintiff's credibility").

## IV. Conclusion

For the reasons set forth above, the ALJ's decision is affirmed.

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

Dated: March 9, 2015
Jefferson City, Missouri